### ED. UNDERWOOD v. THE STATE.

#### No. 1424. Decided June 1, 1898.

1. **Joint Defendants—Statement of Counsel for One as to Why His Client Pleaded Guilty.**

On a joint trial of two defendants for robbery, and after both had pleaded not got guilty and the trial was in progress, one of them withdrew his plea of not guilty and entered a plea of guilty. Afterwards the attorney of this latter defendant took the stand as a witness, and, over objection of this appellant, was permitted by the court to testify that he advised his client to plead guilty because he saw no hope for him, as he had investigated the case and saw that he had no defense, and so advised him to plead guilty. Held, error, and certainly must have had a powerful influence upon the minds of the jury as to the guilt of both defendants.

2. **Robbery—Immaterial and Inadmissible Evidence in Rebuttal.**

On a trial for robbery, alleged to have been committed on the 9th of November, where testimony had been adduced for defendant to the effect that from the 11th to the 18th of December he was at home every night, it was error to permit the State, in rebuttal, to prove that on the night of the 14th or 15th of December the defendant was at the store of one Levy, where he committed another robbery. Such evidence was immaterial by way of rebuttal to the aforesaid testimony for defendant, and it was inadmissible and most damaging as showing a distinct offense of the same character committed on an entirely different prior occasion.

3. **Robbery by the Use of Firearms—Evidence.**

Where the indictment charged a joint robbery, by two defendants, of one S., by the use of firearms, it was competent for the State to prove that one of the defendants had a knife which he held drawn upon S., while the other held his pistol on the wife of S. and robbed her. The evidence as to the knife and the robbery of Mrs. S. was part of the same transaction, and the pistol was used in the robbery of both.

APPEAL from the Criminal District Court of Harris. Tried below before Hon. E. D. CAVIN.

Appeal from a conviction for robbery by the use of firearms; penalty, death.

The charging part of the indictment is as follows, viz: "On the 9th day of November, in the year of our Lord one thousand eight hundred and ninety-six, in the said county of Harris, in the State of Texas, with force and arms, then and therein and upon Ed. Sacks; did make an assault; and did then and there by the said assault, and did then and there display a pistol, the said pistol then and there being a deadly weapon, and by violence to the said Ed. Sacks, and by putting the said Ed. Sacks in fear of life and bodily injury, fraudulently and without the consent of the said Ed. Sacks, take from the person and possession of him, the said Ed. Sacks, one silver quarter dollar, lawful money of the United States of the value of twenty-five cents, and two dollars in small coin money of the United States, of the value of two dollars, all which said money was then and there the corporeal personal property of him, the said Ed. Sacks, with the intent to deprive the said Ed. Sacks of the value thereof, and to appropriate the same to the use and benefit of them, the said Ed. Underwood and Joe Burger, contrary," etc.

On the 1st day of February, 1897, said cause was set down for trial for the 17th day of said month, but was not reached for call until the 18th, and when called on said last date the State announced ready for trial, and this appellant then filed an application for a change of venue. The State filed what purported to be a controverting affidavit to appellant's application and supporting affidavits, to which appellant demurred ,which demurrer was overruled by the court. The application was overruled by the court after hearing was had, and appellant and his codefendant, Joe Burger, were called on to announce, when both were arraigned and each pleaded not guilty to the indictment, and each announced not ready for trial, and prepared and presented their applicacation for a first continuance, which was overruled, and the trial was proceeded with over both defendant's objection. The jury were impaneled over appellant's peremptory challenge to the jast juror impaneled thereon, and the defendants being again called on to plead to the indictment, appellant again pleaded not guilty, and Lock McDaniel, Esq., counsel for Burger, entered a plea of guilty for Burger. The court thereupon interrogated Burger and then accepted his plea of guilty, and then upon the court's suggestion Burger's former plea of not guilty was withdrawn and the plea of guilty substituted.

The State adduced its evidence in chief, and appellant had adduced most of his evidence in chief, when, there being a necessity to wait a short time on the return of some process, the district attorney suggested that Burger might put on his witnesses while waiting. Thereupon some character witnesses were put on by Burger (for the purpose of giving evidence in mitigation of punishment on his plea of guilty), and then Burger took the stand in his own behalf. Appellant interposed

his objection to Burger giving any testimony tending to connect him (appellant) with the commission of the alleged offense, when counsel for Burger stated that no question would be asked Burger about the connection of anyone except himself with the alleged offense, and that no testimony would be given by Burger except in mitigation of his punishment on his plea of guilty, and would be confined to himself and his acts. Burger then testified that he and another person, not naming any person, committed the offense, and he then went on to corroborate the alleged assaulted party as to his (Burger's) having had a knife, and further stated that he had no pistol, and he then gave some other alleged details of his alleged participation in the affair, and his counsel then turned him over to the State, who asked him upon cross-examination the question: "Joe, who was the person with you in the commission of the robbery?" To which question, or to any answer thereto tending to connect appellant with the commission of the alleged offense, appellant again objected. This objection was overruled and Burger, over appellant's objection, testified that appellant participated with him in the commission of the alleged offense. After the evidence was in and the arguments concluded the jury were charged on the law by the court, and after retiring and considering their verdict they returned into court, under the court's direction, a verdict of guilty against Burger, assessing his punishment at confinement in the State penitentiary for a term of ten years, and also a verdict finding appellant guilty and assessing his punishment at death."

Ed Sacks and his wife both testified substantially as follows: That on Saturday night, November 9, 1895, about 8 o'clock, the defendant and Joe Burger (both of whom they recognized in court), came into their store. One of them had a silk handkerchief tied across the lower part of his face, from the mouth down. That after they had gotten within a few feet of the counter where witnesses were the shorter man pulled out a pocket knife and the taller one drew a pistol, and they hallooed, "Hold up your hands. Your money or your life!" The taller one pointed his pistol at Mrs. Sacks, and the smaller one drew his knife on Ed Sacks. Ed Underwood was the tall and Joe Burger the short man. Joe Burger went through Ed Sacks' pockets and took his money, which consisted of two or three dollars in United States silver coin. He then searched Mrs. Sacks' pockets, and both the men said that they would kill the parties if they made any outcry or moved. They then searched the money drawer, and got perhaps a nickel or so. After the robbery they each took Ed Sacks by the arm and led him out into the street, and after going a short distance turned him loose and told him to go back and keep quiet or they would kill him. Neither of the witnesses had ever seen the robbers before, but Mrs. Sacks testified, that about three months after the robbery, about 8 o'clock at night, she saw the two robbers and a third man pass her store, and she recognized the two robbers, Underwood and Burger. A year after the robbery, about November 1, 1896, Ed Sacks read a notice in a paper, that two parties had been ar-

rested for robbery, and that they were in the city jail. · He went to the jail, and there picked out and identified Ed Underwood and Burger, from among a lot of other prisoners therein confined, as the men who had robbed him on the night of November 9, 1895. ·

The matters pertaining to the testimony of Lock McDaniel, Esq., counsel for Burger, are fully stated in the opinion, as is also the matter of the testimony of Joe Levy.

*J. B. Brockman, James A. Breeding,* and *H. S. Williams,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Ed Underwood and Joe Burger were convicted of robbery by the use of firearms. Underwood was given the death penalt, and Burger a term of ten years in the penitentiary. Both prosecuted an appeal to this court. Since the filing of .the record, however, Burger has withdrawn his appeal, accepted his sentence, and is now undergoing the allotted punishment.

When the case was called for trial, both defendants entered their plea of not guilty. At some subsequent stage of the trial, appellant Burger withdrew his plea of not guilty, and entered a plea of guilty. During the progress of the trial, Lock McDaniel, attorney for Burger, took the stand as a witness to explain why Burger had pleaded guilty. The defendant Underwood objected to said witness giving any testimony as to Burger's reasons for pleading guilty, whereupon McDaniel stated that he only proposed to testify to some matters in Burger's behalf in mitigation of the penalty that the jury might .assess against him, and the court overruled the objection, and permitted the witness to testify that he (McDaniel) had advised Burger to plead guilty, because he saw no hope for him, as he had investigated the case, and saw that he had no defense, and so advised him to plead guilty. Appellant reserved his bill of exceptions.

There was error in permitting this testimony. The defendant Underwood was jointly indicted with Burger, and the same testimony introduced against one was necessarily testimony as against the other in regard to the main facts; because, if Burger was guilty, the defendant Underwood was also guilty, as the theory of the prosecution was based upon the fact that the two robbed Ed Sacks. The opinion of Burger's counsel as to ·Burger's guilt could not be evidence against Underwood, nor could it be evidence in mitigation of the penalty to be assessed against Burger. As an opinion of the witness it was clearly inadmissible. This opinion could not be given under the circumstances of this case, that his client, Burger, was guilty, without necessarily indicating in said opinion that Underwood was guilty. The statement of the witness that he advised his client to plead guilty because he saw no hope for him after a careful investigation of his case, certainly must have had a

very powerful influence upon the minds of the jury as to the guilt of both Burger and Underwood.

The State offered in rebuttal the testimony of Joe Levy, to the effect that on the night of the 14th or 15th of December, after this alleged robbery on the 9th of November previous, the defendant Underwood was in his store on Louisiana Street, in the city of Houston. This, it seems, was offered in rebuttal of the testimony of George Underwood and his wife, to the effect that from the 11th to the 18th of December the defendant Underwood was at their home every night, and that he worked during the day. If this testimony was offered simply to contradict said Underwoods upon this point, it was an immaterial matter, and had no connection with this case, and should have been excluded. If it was offered for the purpose of showing that on the occasion of his visit to Levy's store he was engaged in a similar transaction at that point to the one under investigation, then it was of the most damaging character; and in either event it was inadmissible and should have been excluded.

The State was permitted to prove by Ed Sacks, the alleged injured party, that the smaller man of the two who came into his store and robbed him had a knife and told him he would kill him if he did not give up his money, and held the knife drawn on him while he robbed him. The same witness testified that when the two men came into his store and robbed him they said, "Hands up!" and the taller of the two held his pistol on Mrs. Sacks, and told her to give up her money, or he would kill her; while the shorter man of the two, with a knife in his hand, took away his (Sacks') money from his pocket. This testimony was properly admitted. The point of objection seems to be found in the fact that the witness was permitted to testify in regard to the knife that was used in the transaction, and also that money was taken from Mrs. Sacks at the same time. There is no merit in this contention. It is true that the indictment only alleged the robbery by the means of the use of a pistol. Still this was a part and parcel of the transaction. They robbed both parties at the same time, and a pistol was used by one of the men while the other did the robbing, and it was pointed at both Sacks and his wife, and by means of it they were forced to submit to the robbery.

There are several other interesting questions in the record of more or less importance, but we deem it hardly worth while to discuss them in the attitude in which the case is placed. As before stated, Burger has withdrawn his appeal, and is undergoing his punishment. The alleged misconduct of counsel of Burger in inducing the defendant Underwood to announce ready for trial under the apprehension and with the belief that he (Burger) was going to fight his case to the end under the plea of not guilty, and thus prevent him from obtaining a severance, or use his right to obtain a severance, can not arise upon another trial; and, as the case will be reversed upon the first two questions above discussed, we will not enter into a discussion of this matter. We would observe, however, that this conduct, taken in connection with the testi-

mony of said attorney, seems to have placed the defendant Underwood in an attitude on the trial in which he ought not to have been placed.

There are also some bills of exception reserved to the action of the court in impaneling the jury. These are not discussed, because they will not occur upon another trial. Neither will we discuss the action of the court in overruling the motion to change the venue, for upon another trial, if such a motion should be made, it may be placed in an entirely different attitude, and upon a different state of facts. And the same may be said of the motion for a continuance. The witnesses may be present upon another trial, and if not, that will be the second application for a continuance and would place the matter in a different attitude. For the two errors discussed, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*

HURT, Presiding Judge, absent.