### F. B. Martin v. The State.

#### No. 3451.    Decided March 21, 1906.

**1.—Murder in Second Degree—Charge of Court—Principal.**

Where upon trial for murder, the evidence showed that the defendant was en-volved in the homicide by the same facts which envolved his codefendant, there was no error in the charge of the court connecting the defendant as the principal with his codefendant in the homicide; besides the court gave his charge eliminat-ing defendant in the commission of the homicide if his codefendant acted independ-ently.

**2.—Same—Justifiable Homicide—Theft of Property—Defense of Property.**

Where upon trial for murder, the evidence showed that in an attempt of the defendant and another to recover certain cattle, which under a claim of right by open taking by the deceased sometime before the homicide, were at the time of the difficulty in his possession, when the deceased was killed, the issue of theft of said cattle and their forcible recovery was not in the case, and a charge on that issue was not required, and the charge submitted by the court on the issue of theft, although not necessary, inured to defendant's benefit.

**3.—Same—Right to Use Force to Regain Possession of Property.**

Where upon trial for murder, the evidence showed that the defendant had levied an execution on certain cattle of the deceased, and the deceased had openly taken some of the cattle back to his premises and that defendant and his codefend-ant proceeded to take them from deceased by force, and that an altercation ensued between defendant and his codefendant on the one side and the deceased on the other, in which defendant's codefendant shot and killed the deceased, the court properly charged that the defendant and his companion had a right to regain possession of said cattle, and to use such force as was necessary to overcome resistance offered, even to the extent of taking life. This charge together with one on self-defense of defendant and his companions was sufficient.

**4.—Manslaughter—Charge of Court—Adequate Cause.**

Where upon trial for murder it was doubtful whether the issue of manslaughter was raised by the evidence, but the court nevertheless submitted certain acts of deceased as adequate cause, the defendant could not complain.

Appeal from the District Court of Rusk. Tried below before the Hon. Richard B. Levy.

Appeal from a conviction of murder in the second degree; penalty, twelve years imprisonment in the penitentiary.

The opinion states the case.

*W. W. Moore, Young & Stinchcomb,* for appellant.—On question of principal: Ross v. State, 10 Texas Crim. App., 455; Taylor v. State, 13 id., 184; Hardin v. State, 8 id., 182; Stewart v. State, 18 id., 598; Conn v. State, 11 id., 390; Lynch v. State, 24 id., 350; Crook v. State, 27 id., 198.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of murder in the second degree, and his punishment fixed at confinement in the peniten-tiary for a term of twelve years; hence this appeal.

A summary of the facts shows that the difficulty in which the homicide occurred arose in regard to a levy of execution made upon some cattle of deceased, Culver. The writ of execution was on a judgment in favor of a client of appellant. The writ was levied by deputy sheriff, Hall Wilkins, who was also indicted for the same offense; and thirteen head of deceased's cattle were seized and carried to the home of Hall Wilkins, who lived a mile or two from deceased's house. The day before the homicide appellant and Wilkins went to the little town of Kilgore, to see about getting out notices of sale. On the next day they were in Kilgore and went home about 3 o'clock in the afternoon, both living in the same vicinity. According to the testimony of appellant, as they approached Wilkins' premises, they saw deceased driving the cattle from the enclosure of Wilkins, where he had placed them. When they arrived at the house of Wilkins his wife also told them that deceased had turned four head of the cattle out about 12 o'clock, and she put them back in the enclosure, and she told him to leave them there until her husband came, but he refused to do this. Appellant instructed Hall Wilkins that he was responsible for the cattle, and would have to get them back. Hall Wilkins then requested appellant and Bert Barnett to go with him to get the cattle back. Appellant and Wilkins armed themselves, appellant going to his house for the purpose, and took his son, Fritz, with him; and they all proceeded to the house of Culver. On the way appellant remarked, "Hall, I don't know whether Mr. Culver knows it or not; but he is guilty of theft of those cattle under the law." Hall said, "I believe we will have trouble in getting the cattle, from what he told me yesterday about the wagon." Bert Barnett asked him what Culver said, and Hall told Bert, that Culver said he would kill him or any other God damn man that came after his new wagon. Bert Barnett said, he believed they would have trouble. I told them I could not believe he meant what he said. Hall Wilkins said, 'You don't know him.' Bert said, he was not going over there without some protection more than Wilkins' pistol, and wanted to go home after his gun. On the way to Culver's, appellant informed Wilkins that if Culver resisted him in taking the cattle he could arrest him. When they got to the house, according to the version of appellant, they stopped at the gate, which was some little distance from the house; they halloaed, and Mrs. Culver came to the north door of the residence and they asked for deceased. He then came. Deceased asked what was wanted, and Wilkins replied, "Come here, I want to talk to you." Appellant then said to Hall Wilkins, "Tell him what you came for." Hall said, "I came for the cattle you took out of my field." Culver said, "Hall, they are my cattle and you cannot get them. I will kill you or any one else that attempts to take them." Hall said, "Mr. Culver, it is my duty to get the cattle: consider yourself a prisoner." Mrs. Culver then stepped out in the hall and said the cattle were hers and you cannot get them. Hall Wilkins started to open the gate. Culver pointed his hand to-

wards Hall, and both Mr. and Mrs. Culver told Hall Wilkins not to come in. Hall let the gate come to, and stepped back. Mrs. Culver said to deceased, "Come in my room." Deceased ran to the back of the hall, out of appellant's sight. Hall Wilkins told him to stop, but he did not stop. About this juncture Mrs. Culver stated to appellant, "Look out he is coming with a gun," and appellant looked and saw deceased coming from the rear to the front hall, with a double barrel shotgun, and Culver then shot and missed him; and then appellant fired his gun but missed deceased. Then the shooting became general: Wilkins engaging in it with a pistol. It is conceded that the shot from Wilkins' pistol slew deceased. When deceased fell the firing ceased. According to the State's theory, the witnesses agree with appellant's testimony as to the parties coming to the premises, and as to what transpired up to just before the shooting. Deceased during the conversation claimed that the four head of cattle he had driven away from Wilkins' house were exempt cattle; and he did not propose to surrender them, and appellant and Wilkins then started into the gate, drawing his pistol at the same time. Mrs. Culver then halloaed to him, not to come in the house. When she said this, Hall Wilkins turned to deceased, at the same time holding his pistol in his hand down by his side, and said to deceased, "Consider yourself a prisoner." About this time deceased's wife told her husband to go into her room, and he turned his head, and Martin fired at him with a shotgun. That at this time deceased had no gun, nor was any gun in the hallway. Deceased then started into the room, and Hall Wilkins began firing. Deceased then went back to the gallery, after his gun; got it, came to the front hall, with a double barrel shotgun in his hand, and had the barrel pointing downward, and appellant and Wilkins continued firing at him. When he got to the front hall deceased exclaimed, "Oh! Oh! Hall, don't shoot me." Hall Wilkins fired his gun, and deceased fell to the floor shot in the head, which caused his death. This is a sufficient statement of the facts to discuss the assignments of error.

There are two bills of exception relating to the admission and rejection of testimony; but there is no merit in either of these bills, and it is not necessary for us to review the same.

Appellant complains that the charge of the court connects appellant as a principal with Wilkins in the homicide in a way not authorized by the testimony. We have examined the record carefully in this respect, and we do not believe that the charges complained of are subject to the objections urged by appellant. So far as the evidence is concerned, appellant is involved in the homicide by the same testimony which involves his codefendant Wilkins; and we are unable to separate their rights. Notwithstanding this, the court gave a charge eliminating appellant from the acts and conduct of his codefendant Wilkins in the commission of the homicide, if Wilkins acted independently and he did not participate with Wilkins in his acts.

Appellant seriously insists that the court committed error in his charge on the right of Wilkins, in connection with appellant, to make the arrest of deceased on a charge of the theft of said cattle. The court's charge being predicated on a theft committed within the view of appellant and his codefendant, the contention is that there was another phase of the case which presented the right to arrest, to wit: under article 364, Code Criminal Procedure, where stolen property was found in possession of the thief. As stated, the court's charge confined the right to arrest to a theft committed within the view of the parties making the arrest. According to our view of the testimony, this was the only phase of the case raised. Even, if it be conceded that the right to arrest on account of theft is in this case, that is the only view presented by the testimony. Appellant himself testified that he saw deceased driving cattle away from Wilkins' field, as heretofore stated. But, in our view, there is no theft in this case, and no right to arrest predicated on a theft of the cattle. The cattle were taken openly, under a claim of right; there was nothing clandestine in the action of deceased, and no concealment of the property. Appellant and his codefendant knew what had been done, and expected to find the cattle at deceased's house. The only apprehension they had was that deceased might resist their taking the cattle. True appellant stated to Wilkins on the way to deceased's, that deceased had committed a theft of the cattle but evidently did not know he had, which, according to his conception, was merely a technical theft; the fact, as stated by appellant, would strip the case of any phase of theft. So that, in our opinion, the court was not required to give a charge on behalf of the defendant predicated on the right to arrest deceased for the theft of said cattle. However, the charge given inured to the benefit of appellant.

The real defense and the only defense was adequately presented by the court both in his original charge and in charges requested by appellant, to wit: that under the circumstances appellant and his codefendant Wilkins had a right to regain possession of said four head of cattle by force, and to arm themselves for that purpose, and if they were resisted in recovering the possession, the jury were instructed that the defendant had a right to overcome that resistance, and if their lives or persons were put in danger by any act of deceased, they would have a right to slay him. This was all that was required in this case, so far as the record shows. It may be observed in this connection that a charge on self-defense was given, and also the right that appellant had to act in the defense of Wilkins or Bert Barnett, if their lives or persons were put in danger by the acts of deceased.

Appellant complains of the court's charge on manslaughter and criticises the same on several grounds. We do not believe that it is subject to the criticisms indulged in. The charge on manslaughter told the jury as a matter of law that certain acts of deceased were adequate cause,

which we are inclined to doubt; but this was beneficial to appellant and he cannot complain.

The contention is also made that the evidence is not sufficient. There were two theories presented by the evidence, and the jury believed that of the State; and we will not disturb their finding. The judgment is affirmed.

*Affirmed.*