### Henry Powell v. The State.

No. 3476.     Decided April 17, 1907.

**1.—Compounding Misdemeanor—Venue—Corpus Delicti.**

Where upon trial for compounding a misdemeanor the evidence showed that the property received for the crime of compounding the offense and the negotiations with reference thereto occurred in the county of the prosecution, the mere fact that the defendant went into a neighboring county and prevailed on some one there to go into the county of the prosecution and intercede for him there with the prosecutor did not oust the venue from the county in which the prosecution was laid.

**2.—Variance—Allegation—Proof.**

Where the information alleged that the defendant made the alleged unlawful agreement with A., who was acting for M., and the evidence showed that defendant secured A. to intercede for him with M., there was no variance that A. was not acting for M., although M. delegated A. to deliver the property consideration which was involved in compounding the misdemeanor to defendant.

**3.—Same—Information—Form.**

See opinion for information for compounding a misdemeanor under the provisions of article 291, Penal Code.

Appeal from the County Court of Burnet. Tried below before the Hon. Jas. G. Cook.

Appeal from a conviction of compounding a misdemeanor; penalty, a fine of $100.

The opinion states the case.

*T. E. Hammond* and *Ike D. White,* for appellant.—On question of variance: Randle v. State, 12 Texas Crim. App., 250; Kennedy v. State, 9 Texas Crim. App., 400..

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was prosecuted for a compounding misdemeanor under the provisions of article 291, Penal Code. The charging part of the information is as follows: "On or about the 5th day of May, 1904, in the County of Burnet and State of Texas, one Henry Powell of said county and State, then and there well knowing that theretofore, to wit: on or about the 28th day of April, A. D. 1904, an offense against the penal laws of the State of Texas had been committed by one Will McGown, in to wit: that the said Will McGown did unlawfully, wilfully and wantonly, wound and kill a dog in said county and State, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State; and he the said Henry Powell on the day and date first above written, did then and there unlawfully and corruptly agree with one A. B. Ashabranner, the said A. B. Ashabranner acting for the said Will McGown, that for and in consideration of the sum of $10 in money and one cow and calf then and there paid and delivered to him the said Henry Powell by the said A. B. Ashabranner acting for the said Will McGowan he the said Henry Powell would not inform upon and prosecute the said Will McGowan for said offense so committed by the said Will McGowan, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State."

The evidence in this case shows that Will McGowan shot and killed appellant's dog, for which act appellant filed complaint against him in the county court, which complaint and information were filed in the county court and he plead guilty. Prior to pleading guilty, however, the following is the evidence, in addition to the above, upon which this prosecution is based: "My name is A. B. Ashabranner. I live about one-half or three-quarters mile from Burnet County line, in Williamson County. I am acquainted with the defendant; have known him for sometime; knew him the 5th of May, 1904. I saw and had a conversation with defendant about 100 or 200 yards north of my house; he told me that he was hunting up evidence as to who killed his dog. I told defendant I did not know who killed his dog; defendant then said that Will McGowan my son-in-law killed his dog; that he had evidence of that fact. I then told defendant that I expect McGowan had killed him; defendant then said some one up at Mr. Wicks' house had told defendant that McGowan had killed defendant's dog, and defendant said that he had plenty of evidence to send McGowan to jail or to the penitentiary. I then told defendant that if Will McGowan had killed his dog and had gotten into trouble, that I was not going to have anything to do with it and that McGowan could get out of it the best way he could. Defendant then said that he would put his dog in at $100 and that I ought not to let McGowan go to jail and the penitentiary on my daughter's account if nothing else. Defendant said that he had just seen the officers and that he defendant had already

had the warrants and papers issued, but the officers would not serve them if McGowan would pay him $40; that it had to be done to-day; that it would be too late after 9 o'clock to-morrow, because then the papers would be served.  I told defendant that McGowan did not have anything; defendant then said that McGowan had a cow and calf and that he defendant would allow McGowan $30 for them, and defendant said that McGowan could borrow $10 from his mother (Mrs. John Ahlers).  I then consented to go up to Bertram, in Burnet County, Texas, and tell them what defendant said and see what they would do about it.  Then defendant left and I went and hitched my horse to my buggy and drove up to Bertram and went and saw Mrs. John Ahlers, first, at her house in Burnet County, Texas, and told her what defendant had said, and she gave me $10 and told me to give it to Will McGowan; I then took the $10 and went to see McGowan at his house in Burnet County, Texas, and gave it to him and told him that his mother sent it to him and told him what defendant had said; McGowan hesitated for a while and then told me to take the $10 and carry and give it to defendant, and tell the defendant to come and get the cow and calf; I then carried the $10 to defendant and gave it to him at defendant's residence in Burnet County, Texas, and told defendant that McGowan said to come and get the cow and calf.  Defendant came that same evening and got the cow and calf at McGowan's residence, in Burnet County, Texas.  When defendant came to my house his little boy was with him; they were in a buggy, and the conversation between me and defendant was had north of my barn 100 or 200 yards.  I live in Williamson County about one-half or three-fourths of a mile from Burnet County line.  When I went to Bertram, in Burnet County, Mrs. Ahlers, mother of Will McGowan, gave me the money and I took the money and gave it to Will McGowan and he told me to take it to defendant and tell defendant to come and get the cow.  I had gone to them and told them what defendant said because defendant requested me to and to accommodate defendant.  I guess I was acting for defendant; I had had no conversation with McGowan before this time with reference to this matter.  Defendant did not say that he was taking the cow and money for the dog, but said that if the money and property were delivered to him, that there would be nothing more of it."

The above is substantially the evidence in the case, which evidence was submitted to the court without a jury, and the court found appellant guilty and assessed his punishment at a fine of $100.

Appellant's first proposition is that the court erred in overruling defendant's demurrer on the ground that the offense, if any, was committed in Williamson County and not in Burnet County, and holding that the county court of Burnet County had jurisdiction to try this cause.  We do not think there was any error in the ruling of the court. The above cited evidence shows clearly that the offense was committed in Burnet County.  The mere fact that appellant went to Ashabranner

in Williamson County, a half or three-quarters of a mile and got him to intercede with McGowan's mother and with McGowan, and have the $10 and cow and calf delivered, all of which was done in Burnet County, would not prevent successful prosecution in Burnet County by reason of the fact that Ashabranner was in Williamson County when he undertook to perform the task.

The second assignment is that there is a variance: that it is alleged in the complaint and information that the defendant made the alleged and unlawful agreement with the witness A. B. Ashabranner who was acting with Will McGowan, and the evidence shows that said Ashabranner was not acting for McGowan but was acting for the defendant. It is true appellant went to Ashabranner in Williamson County and secured his services in talking to McGowan's mother and to McGowan, but the evidence shows conclusively that McGowan and his mother lived in Burnet County; that Ashabranner secured the $10 from McGowan's mother and went to Will McGowan in Burnet County and told him what appellant requested; McGowan there delegated Ashabranner to go and deliver $10 to appellant, and tell appellant to come and get the cow and calf. Appellant secured the cow and calf in Burnet County, and the $10 in Burnet County. So there is no variance, and the evidence is ample to support the verdict, and the judgment is affirmed.

*Affirmed.*