## JOHN N. JENNINGS V. THE STATE.

### No. 824. Decided November 30, 1910.

**1.—Murder—Evidence—Collateral Declarations—Impeachment.**

Upon trial of murder it was reversible error to admit in evidence over the defendant's objections, the declarations of the witness to a third party with reference to what the witness' opinion was as to what deceased would do to defendant for marrying his daughter; and then permit the State to impeach the witness' denial of such declarations, as this was a collateral matter and could shed no light on the transaction. Following Drake v. State, 29 Texas Crim. App., 265, and other cases.

**2.—Same—Evidence—Declarations of Deceased.**

On trial of murder the court erred in not permitting the defendant to show the feeling and animosity that deceased had towards the defendant, by not admitting in evidence deceased's declaration with reference to the defendant for marrying daughter of deceased.

**3.—Same—Evidence—Acts of Deceased.**

On trial of murder the court erred in not permitting the defendant to show the conduct of deceased towards the defendant, by not admitting in evidence the declaration of the deceased to the effect that he would go back there to where defendant lived and that they would hear from him in about four days.

**4.—Same—Evidence—Acts of Third Parties.**

Where, upon trial of murder, it developed that the deceased had left his wife, there was no error in the court's ruling in not allowing defendant to show that the reason of this separation was because the deceased had been guilty of incest with his daughter.

**5.—Same—Charge of Court—Manslaughter.**

Where the testimony of the State made out a case of murder, and that of the defendant a case of self-defense, there was no error in the court's failure to charge on manslaughter.

**6.—Same—Self-Defense—Manslaughter.**

Simply because self-defense is in a case, it does not necessarily follow that the court must charge on manslaughter. Following Jirou v. State, 53 Texas Crim. Rep., 18.

Appeal from the District Court of Wheeler. Tried below before the Hon. F. P. Greevor.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Marion Reynolds* and *A. N. Lawrence,* for appellant.—As to question of impeachment of witness: Cases cited in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—The appellant was convicted of murder in the second degree, his punishment being assessed at ten years confinement in the penitentiary.

From the statement of facts we gather that the deceased, J. C. Colwell, resided close to the town of Shamrock, in Wheeler County, Texas; that he was a man of family. Domestic troubles sprang up between himself and wife when she left him and took up her home with her father, Mr. Bowen; that deceased had two daughters, one about seventeen and the other about fifteen years of age; he lived out on a farm or ranch; his oldest daughter, after the separation, married a man by the name of Horn, the other daughter, a girl about fifteen years of age, married the defendant in this case, John N. Jennings. The deceased was violently opposed to this marriage, and after an application was made, sworn to before the county clerk by the defendant, his license to marry the daughter of deceased was granted. After his marriage the deceased went before a justice of the peace and made an affidavit against the defendant charging him with both perjury and incest in that the defendant was related to his daughter. The defendant was a first cousin of the wife of deceased, which made him second cousin to his own wife. The defendant was arrested on a warrant issued by the justice of the peace and gave bond. It seems from that time on bitterness sprang up between the defendant and deceased. The testimony discloses that the deceased made several threats against the life of defendant and swore that he should never live with his daughter and that he intended to separate them. He carried his gun wherever he went, and it seems that some of the neighbors tried to interfere and keep both the defendant and the deceased from going armed. On the day of the difficulty, which occurred in the town of Shamrock, on the 17th day of February, 1910, the defendant was at work assisting in unloading a car of coal. The deceased, in company with a man by the name of Bradley, passed within seventy-five yards of where

defendant was unloading the coal, walking, deceased leading a horse, and strapped to the saddle of the horse was a Winchester rifle. The deceased went on into the town of Shamrock. Defendant left his work, went to Bowen's house, where he was living, got a gun and returned to town and went into the store of a man by the name of Griffin, sat down by the stove and stayed there awhile, the day being quite cold. Directly he got up and went to the window at the front of the house, and as deceased and Bradley stepped off of the gallery of the store across the street and had made a few steps toward the store in which defendant was defendant fired and killed deceased and also shot Bradley. The deceased, before the shooting, put his horse in a wagon yard and took the gun that was strapped to the saddle and carried it with him and had it in his hands at the time of the killing. After the shooting there was also found a pistol on deceased's person. The defendant proved by the witness Davis that after the deceased and Bradley passed by where the defendant was unloading the coal he had occasion to go to a closet up close to the wagon yard where deceased had placed his horse. This closet had a couple of stalls. He went into one and directly the deceased and Bradley went into the other stall and he overheard a conversation between them in which the deceased said to Bradley that he, Bradley, had better take his, deceased's, pistol. Bradley remarked that it was not necessary and asked deceased if his cartridges were all right. The deceased replied, "Yes, my cartridges and gun 'are all right and they will get Jennings." ' The witness said that he left this place and went and told defendant about it and that defendant then went off to get a gun. On the trial of the case when Horn was upon the witness stand, he being the man who married deceased's oldest daughter, he testified in behalf of the defendant of the bitter objection of the deceased to the defendant and his bitter objection to defendant's marriage to deceased's daughter, and to threats that had been made by the deceased. Over the objections of the defendant the State was permitted by the court to ask the witness if he, witness, had not stated to a man by the name of Neese that defendant had married deceased's daughter, and that the deceased would have to do some killing now, as the defendant would damn sure kill the deceased. He denied making this statement, and the State was permitted, over the protest and objection of the defendant, all of which is saved by proper bill of exception to show that the witness did make that statement to him, giving the time and place. This was objected to on the ground that it was collateral, hearsay, involved the opinion of the witness, and defendant could not be bound thereby. It is not necessary to write to any extent upon this subject. This character of testimony has been condemned so often by this court that we are at a loss to know why the State's counsel will insist upon the introduction of this kind of testimony or why trial courts will permit it. In the Drake case, reported in the 29

Texas Crim. App., 265, a question similar to this case came before our court for review and the question was exhaustively reviewed by Judge Wilson and the rule so well established and the reasons why such testimony should not be admitted so nobly stated that we believe it would be superfluous on our part to add anything further to what was said by this court in that opinion. The question there was this: The son of Drake, who testified in behalf of defendant, was asked over the objection of the defendant if he had not stated in the presence of Robinson, Bacon and others that he knew his father was going to kill Guinn before he and his father left home that morning. He denied making this statement, and Robertson, Bacon and others were placed on the stand to contradict him, and the court held in that case that this was collateral and irrelevant and that the State was bound by the answer given by the witness; that the testimony was simply the opinion of the witness and that the defendant could not be bound by that opinion. This rule has been followed by this court down to the present. See Cogdell v. State, 43 Texas Crim. Rep., 178, 63 S. W. Rep., 645; Collins v. State, 66 S. W. Rep., 840; Wilson v. State, 37 Texas Crim. Rep., 64, 38 S. W. Rep., 610; Morton v. State, 43 Texas Crim. Rep., 533, 67 S. W. Rep., 115; Parker v. State, 46 Texas Crim. Rep., 461, 80 S. W. Rep., 1008; Woodward v. State, 50 Texas Crim. Rep., 294, 97 S. W. Rep., 499; Hobbs v. State, 53 Texas Crim. Rep., 71, 112 S. W. Rep., 308. The testimony was clearly inadmissible. It was not only inadmissible, but it was damaging and hurtful to the defendant, and the court below committed error in permitting this testimony to go to the jury.

We find also in the record a bill of exceptions to the action of the court in refusing to permit the defendant to prove by H. M. Wiley that after the marriage of the two daughters to Asa Horn and to Jennings, he, witness, was in the town of Wheeler and had a conversation with the deceased in reference to the men who had married his daughters, and that he called Asa Horn's name, but referred to the other party as "that other man," and remarked that he would separate "that other man and his wife;" that they should not live together; that this testimony could have referred to no one but the defendant, because Horn and defendant were the only men who had married his daughters. This testimony was objected to on the part of the State because it did not show that it referred to the defendant. Defendant offered this testimony to show the feeling and animosity that deceased had toward the defendant. We think the court erred in not permitting this testimony to go to the jury; that it was admissible for the defendant to show the feeling and animosity of the deceased, and when taken in connection with the other action and conduct of the deceased was a circumstance to throw light upon the transactions at the time.

We also find in the record a bill of exceptions to the action of

the court in not allowing defendant to prove by Suggs that he, some two or three weeks before the homicide, had a conversation with the deceased. The deceased was speaking about his condition and circumstances, about the separation of himself and wife and the witness advised him to leave and go somewhere else, and the deceased told him, "No, I will go back up there to Shamrock and you will hear from me in about four days." This was objected to on the part of the State as irrelevant, because it did not show that the deceased was referring to the defendant. We are of opinion that the defendant was entitled to have this testimony to go before the jury, in view of the conduct of deceased toward the defendant, of his objection to his marriage to his daughter, and as showing the malevolence of deceased generally to his family and the defendant, and for this reason the court should have permitted this testimony to go to the jury.

We also find in the record a bill of exceptions to the action of the court in not allowing defendant to prove by deceased's wife and daughter that the deceased had been guilty of incest with his daughter and that was the cause of the separation of the deceased and his wife. This testimony was inadmissible and had no bearing upon the case and the court correctly excluded this testimony from the consideration of the jury. The domestic troubles existing between the deceased and his wife had no place in the record in this case. The jury was not required to know the cause of the animosity that existed between these parties. It had only to do with the fact that bad feeling did exist.

We think there is no merit in the other bills of exception in the record.

The court submitted the case to the jury on murder in the first and second degree and self-defense. He did not charge upon manslaughter and complaint is made of the failure of the court so to do. We do not think the facts called for a charge on manslaughter. The testimony from the State's side makes out a case of murder; from defendant's standpoint a case of self-defense. Simply because self-defense is in the case it does not follow that necessarily the court must charge on manslaughter. Issues arising from the testimony alone should be submitted to the jury. See Jirou v. State, 53 Texas Crim. Rep., 18.

For the errors indicated the judgment will be reversed and remanded.

*Reversed and remanded.*