## ELLIS RENN v. THE STATE.

No. 854.　Decided November 22, 1911.

Rehearing denied January 24, 1912.

**1.—Murder—Evidence—Declarations of Deceased—Res Gestae.**

Upon trial of murder, in order to present to the jury the scene of the homicide as it occurred, so that they could draw proper deductions from all the testimony adduced, there was no error in admitting in evidence the declarations of deceased to the effect that he was going upstairs to get an application blank for membership in a lodge, and shortly after or less than a half minute the shooting occurred in which he was killed by defendant; this was res gestae.　Davidson, Presiding Judge, dissenting.

**2.—Same—Remarks by Judge—Practice.**

Where, upon trial of murder, during a colloquy between counsel on cross-examination of the State's witness, the judge remarked that he thought the witness was trying to do the best he could, and thereafter withdrew the remark, the same was not such error to be ground for reversal.

**3.—Same—Evidence—Improper Questions.**

Where, upon trial of murder, State's counsel acted improperly in asking one of defendant's witnesses if he had not been arrested for whipping his wife, for adultery, and aggravated assault on his wife, but the court promptly sustained objections thereto the same was not such error as to reverse the case. However, such practice is not to be indulged.

**4.—Same—Evidence—Defendant as a Witness.**

Where the defendant had taken the witness stand and testified, there was no error in permitting the State to introduce his evidence on habeas corpus trial, for the purpose of impeachment.

**5.—Same—Evidence—Impeaching Witness.**

Upon trial of murder, where a defendant's witness had testified that deceased had a pistol and made threats against the defendant shortly before the homicide in witness' barber shop, there was no error in permitting the State, for purposes of impeachment, to show that no such conversation occurred.

**6.—Same—Evidence—Impeachment.**

Where a defendant's witness testified that a person then dead had heard deceased make certain remarks, it was permissible to show that said dead witness was not there at the time and place when said remark was made.

**7.—Same—Evidence—Contradicting Witness—Cross-Examination.**

Where a witness for the defendant, on cross-examination, denied that on the night of the killing he had told witness he was going to kill deceased, and testified that it was deceased who told him he was going to kill the defendant, there was no error, for the purpose of impeachment, to show that said defendant's witness had told State's witness that defendant did say he was going to kill deceased.　Davidson, Presiding Judge, dissenting.

**8.—Same—Evidence—Bias of Witness.**

Where there was a sharp conflict between the testimony of a witness

for the defendant and a witness for the State, as to who it was that entered a certain barber shop and made certain threats; defendant's witness attributing the same to deceased and State's witness to the defendant, there was no error, in order to show the bias of defendant's witness, to introduce the declarations of said defendant's witness to the defendant, to the effect, "Well, you can have my last dollar," and later, "That is Renn," when witness heard the shooting; witness having denied having made these statements; the court properly limiting said testimony to the credibility of the witness. Davidson, Presiding Judge, dissenting.

### 9.—Same—Evidence—Husband and Wife—Petition for Divorce—Bill of Exceptions.

Where the bill of exceptions did not set out the petition for divorce by the wife of defendant which the court excluded, the same could not be considered on appeal; besides, said wife was living at the time of the trial, although she lived separate from her husband, there being no showing that she had declined to testify for the defendant.

### 10.—Same—Charge of Court—Self-Defense—Requested Charges—Invited Error.

Where the court, in his main charge, gave in nearly the exact language the law of self-defense as requested in defendant's special charges, the defendant could not complain even if there was error, as the same was invited by defendant's charge.

### 11.—Same—Sufficiency of the Evidence—Manslaughter.

Where the defendant was convicted of manslaughter, which was sustained by the evidence, there was no error.

### 12.—Same—Practice—Illegal Questions—Rule Stated.

Where the trial court promptly sustained objections when improper questions were asked, it has never been the policy of this court to reverse the case, unless the conduct of the prosecuting attorney was such as to render it inevitable that the mere asking of a question was calculated to injure the defendant.

### 13.—Same—Evidence—Impeachment.

Where defendant's witness had testified on the trial to a threat made by deceased, and denied that defendant had made any threats in his presence, when asked if shortly after the killing he had not made such statement of defendant's threat to a State's witness, there was no error in impeaching him by said State's witness; and this although the defendant's witness was on cross-examination by the State. Davidson, Presiding Judge, dissenting.

### 14.—Same—Evidence—Contradicting Witness—Cross-Examination—Bias.

Where defendant's witness testified that deceased came to his shop, cleaned his pistol and told him that he was going to whip or kill defendant that night, and that a short time before the killing witness informed defendant of these threats; and a State's witness testified that he was in said shop and no such conversation occurred and that deceased was not there, but that defendant made a threat in regard to deceased, the State, on cross-examination of said defendant's witness, was not bound by his testimony, but could impeach him, as defendant's witness showed bias, prejudice, and hostility. Davidson, Presiding Judge, dissenting.

### 15.—Same—Hostility of Witness—Bias—Cross-Examination.

Where defendant's witness showed bias for the defendant and testified in his favor as to certain communicated threats made by deceased, which the State controverted and claimed were made by the defendant, the jury is entitled to have all the information to enable them to arrive at the truth of the matter, and there was no error in permitting the State to introduce testimony impeaching the defendant's witness as to all his statements made connected with such testimony, and such bias may be shown on cross-examination and the predicate laid to impeach the witness. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Tarrant. Tried below before the Hon. Jas. W. Swayne.

Appeal from a conviction of manslaughter; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Mike E. Smith* and *Parker & Parker,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, charged with the murder of Sebastian Collins. He was convicted of manslaughter, from which judgment he has appealed.

It appears from the record the deceased was intimate with the wife of defendant, whether criminally so or not is not disclosed by the record, but the intimacy had caused the separation of defendant and his wife, defendant believing the relations were improper. For some time before the killing the defendant and deceased were on unfriendly terms. Defendant and two or three witnesses testify that deceased had made threats, and defendant testifies that he thought deceased was attempting to carry the threats into execution when he shot and killed him. The witnesses for the State testify there was to be a lodge meeting at the Temple building that night. Deceased said to a witness he thought he was going to apply for membership, when witness replied he had no application. Deceased remarked he would get an application, and started towards the stairway, when the shooting began. Deceased had no weapon, but had some papers in his hand.

In his first bill of exceptions appellant objects to this witness being permitted to detail this conversation with deceased, as it was not shown that defendant heard it. The witness says in answer to the question: "How long before he made that remark that 'if that was all he would go upstairs and get an application blank,' before the shooting began? 'Just the time it would take him to walk that distance from where he was standing, it was less than a half minute.'" We think the statement was admissible as res gestae. The scene as it occurred should be presented to the jury as near as possible, both from the standpoint of the State and the defendant, that the jury might be enabled to draw proper deductions when all the testimony has been adduced. Merritt v. State, 39 Texas Crim. Rep., 76; Greenl. on Ev., sec. 198; Underhill on Ev., sec. 93.

While the witness James Guinn was being cross-examined by appellant's counsel, in answer to the question: "You had known for five months of the difference between defendant and deceased," the witness answered: "I won't say a difference between them—I knew that Renn was mistreating his wife, and she told it, and that night

Vol. LXIV Crim.—41.

he and his wife was out to my house and I found out that there was a difference and that Renn was accusing Collins of his wife," to which answer appellant objected, because it was not responsive to the question. The court excluded the answer, when appellant's counsel again questioned witness about how long he had known of the difference between defendant and deceased, when the witness said: "I can not answer that without telling him——" when he was stopped by the court. The State's counsel insisted that the witness should be permitted to answer the question in his own way, while defendant insisted that he only wanted a direct answer, the court remarking during the colloquy: "I think the witness is trying to do the best he can," to which remark the defendant objected and reserved a bill of exceptions, when the court instructed the jury: "You will not consider that remark of the court. It was probably improper for the court to say that, but the idea of the court was different from what Judge Parker thinks it was. You need not consider any remark whatever made by the court with reference to this question." While under article 767 of the Code of Criminal Procedure it is improper for the court to comment upon testimony, yet this court has frequently held that such remark must be calculated to injure the defendant, to be ground for reversal of the case. (McGee v. State, 37 Texas Crim. Rep., 668; Clemmons v. State, 39 Texas Crim. Rep., 279; Rodriguez v. State, 23 Texas Crim. App., 507.) The remark we do not think resulted in any injury to the appellant, and especially so when they were at once instructed not to consider it.

State's counsel acted improperly in asking one of the defendant's witnesses if he had not been arrested for whipping his wife, if he had not been arrested for adultery, and if he had not been arrested for committing an aggravated assault on his wife. The court sustained the objections of defendant to each of these questions, and we are at a loss to know why counsel for the State will insist on asking questions of this character. However, as the court promptly sustained the objections, the question arises, was it such error as would be hurtful to defendant? For as said by Judge Davidson in Fitzpatrick v. State, 37 Texas Crim. Rep., 20 (in which case the defendant was compelled to answer that he had been convicted of an assault and fined) "that notwithstanding this impeaching testimony should not have been admitted, was it of a character to injure or impair the rights of appellant?" and under the record in that case it was held harmless error. It is not every slight error that should call for a reversal of a case; it is only such errors as might and probably did work injury to the defendant. This witness did not claim to have seen the difficulty, and was not a witness to defendant's plea of self-defense, and inasmuch as the defendant was only found guilty of manslaughter, we do not think the error was such that the case should be reversed. However, such practice should not be in-

dulged in, and if from the whole record, even though the questions are not required to be answered, it appears that the jury was probably influenced by such improper conduct, we would reverse and remand for another trial.

The appellant having taken the stand, testified in his own behalf, there was no error in permitting the State to introduce his evidence at the habeas corpus trial in rebuttal for the purpose of impeachment. Collins v. State, 39 Texas Crim. Rep., 441; Preston v. State, 41 Texas Crim. Rep., 300.

Bills of exception Nos. 5, 6, 7, 8, 9 and 11 all relate to the impeachment of the defendant's witness Will Vaughn. Vaughn testified for the defendant that deceased Collins actually carried a pistol and often left it at his barbershop, and had left it there the morning of the day of the killing. That late in the afternoon deceased came to the shop and got the pistol. Before leaving with it he had asked witness for oil to clean his pistol. He let him have it, and deceased took the pistol to pieces and cleaned and oiled it, when the witness says the following conversation took place: "During the time that he was oiling the gun I asked him his object for oiling up. 'Old boy, you kind of fixing up a little, aren't you?' and he says, 'Yes, I am expecting to use it.' I says, 'You think you will go out shooting a target practice?' He says, 'No, I don't.' He says, 'Renn has said something to me I don't like and I am going to whip him tonight or kill him.' I says, 'Collins, the very idea, you talk that way, I am ashamed of you, knowing how close you are, even to have to talk like you would even do a thing like that—would you infringe on my feelings, me a friend like I am?' He says, 'That doesn't matter, my mind is ready composed, and I will not be deposed.'" The witness testified that Ruby Morrow was working for him and was present when this conversation took place with deceased. That he told defendant Renn about this conversation the same evening, and only a short time before the shooting. On cross-examination he was asked if he had testified that the name of the girl who was there was Ruby Morrow, and he answered, "Yes, I said that was the girl," but he added that he had six or eight girls there during the year. He was also asked if on the night of the killing and a short time thereafter he, witness, had not told Nick Lightfoot that "Renn had killed Collins, and that Renn (defendant) was in his barbershop that evening and had told him (Vaughn) that he was going to kill Collins (deceased) that night," which statement witness denied. He was also asked that subsequent to this time, if in the presence of Mr. Wilkinson and Ed Loving, if he did not deny making the statement to Lightfoot, and at said time say: "He did not know anything about the case at all," which statement was denied by the witness. He was also asked on cross-examination if the following conversation did not take place between witness and Renn in the presence of Adam Sims: If a short time before the killing Ellis Renn

(defendant) did not walk into his, Vaughn's, barbershop and say: "I have made up my mind to do it; I have just got to do it," and witness Vaughn replied to Renn, "Well, you can have my last dollar," all of which was denied by the witness. Again, on cross-examination he was asked if in the presence of the said witness he did remark when the shooting was heard, "I guess that is Renn now." In rebuttal the State was permitted to prove by E. H. Morrow that he was the father of Ruby Morrow; that she was dead, but at the time Renn killed Collins she was not in Vaughn's shop in Fort Worth, but was in McGregor, Texas, teaching music, and proved by Nick Lightfoot that Vaughn, on the night of the killing, had told him that "Renn had killed Collins, and Renn had told him, Vaughn, that he was going to kill Collins that night," and by Sims that he was present and heard Renn (defendant) tell witness Vaughn, "I have made up my mind to do it; I have just got to do it," and Vaughn said to him, "Well, you can have my last dollar," and at the time of the shooting remarked, "I guess that is Renn now;" and by the witness Lightfoot, that when he asked Vaughn subsequently in the presence of Wilkinson and others, if he had not told Lightfoot, on the night of the killing, Renn had said to Vaughn he was going to kill Collins, he denied knowing anything about the case at all.

All of this rebuttal testimony was objected to and proper bills of exception reserved. To properly understand the ruling of the court it must be remembered, as hereinbefore stated, that the witness Vaughn had testified deceased Collins had come and got his pistol just before the killing, and said he was going to kill defendant Renn; and he had so informed Renn. Witness Sims testified in rebuttal that he worked in the shop with Vaughn, and knew Collins, the deceased. That deceased never came in the Vaughn shop, and had not been in there that day, and had left no pistol there, and did not come in there and get a pistol, but the one who did come in was defendant Renn, who said: "I have made up my mind to do it—I have got to do it." Certainly the statement attributed to defendant was admissible.

There was a sharp conflict in the testimony between witness Vaughn and witness Sims on who it was that came in the shop and made the remarks attributed to defendant by Sims, and to deceased by Vaughn. When witness Vaughn said a dead person had heard deceased make the remark, it was permissible to show she was not in Fort Worth, but in a distant town. It was permissible under all the authorities to show that a witness for a defendant, for the purpose of impeachment of the witness, on the night of the killing said defendant had told him he was going to kill deceased, when on the trial he says it was deceased who told him he was going to kill defendant.

As to the remark, "I guess that is Renn now," if it was an isolated statement it might not perhaps be admissible, but when taken

in connection with all the testimony, the bias of the witness in favor of defendant, we think it properly admitted; at least no such error is presented as should cause a reversal of the case, when the record shows that defendant was permitted to introduce impeaching testimony as to the witness Sims. In addition, the court instructed the jury that they could not consider this statement of Sims, or the testimony of Morrow, Loving and Lightfoot except in so far as it might affect, if they believed it did affect, the credibility of the witness Vaughn, and further instructed them to consider it for no other purpose. McAnear v. State, 43 Texas Crim. Rep., 518; Ryan v. State, 49 S. W. Rep., 599; Bean v. State, 51 S. W. Rep., 946; Webb v. State, 39 Texas Crim. Rep., 534, 55 S. W. Rep., 493; Landers v. State, 39 Texas Crim. Rep., 671, 63 S. W. Rep., 557; Shaffer v. State, 65 S. W. Rep., 1072; Locking v. State, 75 S. W. Rep., 305; Jenkins v. State, 45 Texas Crim. Rep., 173, 75 S. W., 312. In Am. & Eng. Ency. of Law, vol. 30, p. 1102, the rule is stated to be: "Disparaging evidence of matters otherwise collateral may be received when it tends to show the temper, disposition or conduct of the witness in relation to the cause or parties, and not only is this evidence admissible on cross-examination of the witness, but other witnesses may be questioned by the opposite party in relation thereto," citing authorities.

In another bill of exceptions appellant complains that the court excluded the petition for divorce filed by the wife of appellant. The bill is incomplete in that neither the petition nor any allegation in the petition is copied in the bill, but where the bill alleges "said allegation being as follows," is followed by blank lines. In addition, his wife was living at the time this case was tried, and in this connection the court did not err in refusing to give the following special instructions: .

"You are instructed that the argument of O. S. Lattimore closing for the State, to the effect that defendant did not put his wife on the witness stand, that the defendant had the right to put her on the stand, but the State could not, and yet the defendant failed to put her on the stand to corroborate him in his defense, was improper, and you will not consider the same for any purpose whatever."

It is true the bill shows that appellant and his wife were not living together at the time of the trial, but in the bill there is no statement or allegation that would show she would not testify truthfully, or that appellant had sought her as a witness and she had declined to talk with him, or that she was living with those unfriendly to appellant. Eggleston v. State, 59 Texas Crim. Rep., 542, 128 S. W. Rep., 1105.

In the eleventh ground of his motion for a new trial appellant complains of the following paragraph of the court's charge: "In this connection you are instructed that one who is unlawfully attacked is not bound to retreat in order to avoid the necessity of kill-

ing his assailant, but has the right to stand his ground and even to advance on his adversary, and continue to act in self-defense until the danger or apparent danger is past, and to repel the unlawful attack of his assailant with whatever force may reasonably appear to him at the time to be necessary; but when it appears to defendant that such danger or apparent danger, if any, ceases, then such right ceased."

Appellant says (1) : "It is not applied to, nor limited by the facts in evidence in this case; (2) it is but the statement of an abstract principle, instead of being put in a concrete form and explaining the defendant's rights in this particular case; (3) this charge tells the jury that the 'defendant has the right to stand his ground and even to advance on his adversary;' (4) said charge tells the jury that defendant has a right to continue to act in his self-defense, until the danger or apparent danger is past."

In his nineteenth ground appellant complains of the failure of the court to give the following special charge requested by defendant: "You are further charged at the request of defendant that a person unlawfully assailed, not only need not retreat to avoid the necessity of killing his adversary, but has the right to stand his ground and to even pursue his adversary until he finds himself out of danger or apparent danger."

It will be seen that the court could not have erred as complained of in both the eleventh and nineteenth grounds of the motion. The court gave in the main charge in nearly the exact language the law as requested in the special charge, and while we think there was no error in the charge as given, yet if error there be, the appellant invited the court to give in charge this principle of law and he can not now be heard to complain.

In this case the jury by their verdict find all the issues of fact in favor of defendant except that it reasonably appeared to him his life was in danger. The State insisted that it was a case of murder, while it was defendant's contention that it could not be more than manslaughter by reason of the circumstances antecedent to the killing, threats, etc. The appellant testified to conduct on the part of deceased which he says led him to believe that deceased was then and there about to carry the threats into execution. The witnesses for the State, and some of the witnesses for appellant, testify deceased had no weapon. The eyewitnesses testify to no conduct on the part of deceased which would justify appellant in killing Collins.

The issue of the right to defend against danger as it appeared to appellant, viewed from his standpoint, was fairly and correctly given in the charge, and upon this phase of the case the record presents no error, and as the jury found the other issues in favor of appellant, no error harmful to appellant was committed in the trial of the case.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, PRESIDING JUDGE (dissenting).—The testimony mentioned in bills of exception ought to be excluded under the Drake case, 29 Texas Crim. App., 265, and that line of cases including the late case of Hickey v. State, 62 Texas Crim. Rep., 568, 138 S. W. Rep., 1051.

### ON REHEARING.

#### January 24, 1912.

HARPER, JUDGE.—This case was affirmed at a former day of this term, and appellant has filed a brief and an able argument in which he strenuously insists that the court erred, and that the case should be reversed.

We will first discuss the questions presented in appellant's argument, as he doubtless deemed them of most importance. As shown in the original opinion, while appellant's witness, Will Vaughn, was on the stand, the prosecuting attorney asked some improper questions, the first of which was, how many times the witness had been arrested for whipping his wife; the second, how many times the witness had been arrested for adultery, and the third, had the witness ever been arrested for an aggravated assault on his wife. Appellant objected to these questions, and the court promptly sustained the objections made. This witness had testified in behalf of defendant that the evening of the homicide deceased had come to his barbershop, oiled and cleaned his pistol, and told him he was going to whip or kill appellant that night; that he informed appellant of his statement or threat the same evening. The witness did not claim to have seen the shooting or any part of it, nor any of the immediate acts leading up to it. The questions were not such as could or would prejudice the jury against defendant, but appellant insists that they were such as would cause the jury to believe that the witness was guilty of the offense named, or appellant would not have objected, and thus have a tendency to impair the effect of his testimony. We do not think this the necessary or natural result of such questions. If the court sustained the objections, as he did in this instance, would not appellant's counsel insist before the jury, and would not the jury naturally conclude that if the State, by improper and illegal means, was seeking to impair the force of the witness' testimony, that the testimony was cogent and forceful, and the State could not legally impair its effect, and for this reason consideration would be given it? Where the trial court promptly sustains the objections when improper questions are asked, it has never been the policy of this court to reverse the case, unless the conduct of the prosecuting attorney was such as to render it inevitable that the mere asking of the question was calculated to injure the defendant, and in this instance, the questions being such that while if the witness admitted being guilty of the offenses inquired about, might injure his standing in the community, would not necessarily imply that his testimony was

unworthy of credit. In the case of McCorquodale v. State, 54 Texas Crim. Rep., 344, 98 S. W. Rep., 879, the prosecuting attorney asked a witness for the defendant, "Now, is it not a fact that defendant is an old poker player?" Objection was made and sustained, and the court, speaking through Judge Davidson, held there was no error, as there was no testimony admitted before the jury. See also Howard v. State, 37 Texas Crim. Rep., 494; Alexander v. State, 21 Texas Crim. App., 406; Williams v. State, 30 Texas Crim. App., 354; Terrell v. State, 15 S. W. Rep., 769; Harding v. State, 6 Texas Crim. App., 327; Doss v. State, 50 Texas Crim. Rep., 48, 95 S. W. Rep., 1040; Powell v. State, 51 Texas Crim. Rep., 342, 99 S. W. Rep., 1005; Harris v. State, 50 Texas Crim. Rep., 411, 94 S. W. Rep., 227; Leonard v. State, 56 Texas Crim. Rep., 307; Henderson v. State, 49 Texas Crim. Rep., 478, 91 S. W. Rep., 569. Asking the questions proved no fact, and we think it would be an unwarranted assumption on our part to assume that when the court promptly sustained the objection, the jury would at once conclude that the witness was guilty of the offenses named, and that it unduly influenced them. There are cases where we have reversed if questions *probably* injured.

The next criticism is that this court erred in the statement: "There was a sharp conflict in the testimony between the witness Vaughn and witness Sims, on who it was that came in the shop and made the remarks attributed to defendant by Sims, and to deceased by Vaughn." We might have been inaccurate in the use of the word "statement" instead of the word "threats," but not in the conclusion that there was a sharp conflict in their testimony. Vaughn testified that deceased came into his shop, cleaned his pistol, and said he was going to whip or kill defendant. Sims says deceased did not come into the shop that day and had not been in it for several days, and Sims further says defendant did come in, and said: "I am going to do it—I have just got to do it." When Vaughn replied, "Well, you can have my last dollar." Vaughn denied that appellant made any such remark. So it is seen that Vaughn testifies to a threat made by deceased, which Sims says was not made; and Sims testifies to a threat made by appellant, which Vaughn says was not made. Vaughn says deceased was in the shop. Sims says he was not in there that day, and if there is not a direct conflict in the testimony of the two men, we can not understand the statement of facts, and this is followed in appellant's argument by a criticism of that part of the opinion admitting the testimony of the witness Lightfoot, who testified that shortly after appellant had shot and killed deceased he met the witness Vaughn, who told him that "appellant Renn had killed Collins, and appellant had told him, Vaughn, he was going to do it." The witness had testified on the trial to a threat made by deceased, and denied that appellant had made any threat in his presence when he was asked, if shortly after the killing he had not made the above statement to Lightfoot, which he denied. Lightfoot

then testified that he had so stated to him. That this is material can not be denied. The State witness Sims was testifying that appellant was in the shop and making threats against deceased. The defendant's witness Vaughn was testifying that deceased Collins was in the shop making threats towards appellant, and appellant had made no threats. On the night of the homicide Lightfoot says that Vaughn told him that appellant had killed deceased, Collins, and had told him he (appellant) was going to kill deceased. As to the reason why the witness could not be thus impeached, we fail to understand. In the case of Drake v. State, 29 Texas Crim. App., 265 (which has been termed a leading case), this court says: "If in laying the predicate to impeach the witness Drake, Jr., he had been asked, 'Did you not state in the presence of Hugo Robinson, Street Bacon, Bob Fleming, and Todd Ziegler, on the evening or night of August 27, 1887, the day that Guinn was shot by your father, and at or near the store of Chas. Rast, in Waco, that your father told you on that morning before the homicide that he was going to kill Guinn?' the question would have been proper; would have been as to a fact relevant and material to the main issue, a fact with respect to which the witness could be impeached by proving that he did make such statement."

In this case the question asked was, "Did you state in the presence and to Nick Lightfoot that appellant had told you that evening he was going to kill Collins that night?" This was denied by the witness Vaughn. Under the authority of the above case, and all the decisions of this court rendered since that date, it is permissible to thus impeach a witness. Boatright v. State, 42 Texas Crim. Rep., 442; Adams v. State, 52 Texas Crim. Rep., 13; Ex parte Sanders v. State, 54 Texas Crim. Rep., 100; Deneaner v. State, 58 Texas Crim. Rep., 624, and cases cited.

This disposes of all the questions in appellant's brief. However, in the motion for a rehearing several other questions are assigned, but no authorities are cited sustaining his contention—the next ground being that the court erred in remarking: "I think the witness is doing the best he can." This question is treated fully in the original opinion, but for additional authorities see Mitchell v. State, 50 Texas Crim. Rep., 180, 100 S. W., 930; Cole v. State, 51 Texas Crim. Rep., 89, 101 S. W. Rep., 218; Waggoner v. State, 49 Texas Crim. Rep., 526, 98 S. W. Rep., 255.

All the questions raised in the motion for a rehearing having been discussed in the original opinion, we would not further discuss them but for the notation made at the time by our presiding judge, wherein he says: "The testimony mentioned in bills of exception ought to be excluded under the Drake case, 29 Texas Crim. App., 265, and that line of cases, including the late case of Hickey v. State, 62 Texas Crim. Rep., 568, 138 S. W. Rep., 1051." This relates to the testimony offered to impeach the witness Vaughn. As shown

above, the Drake case is authority for the admission of this testimony
of the witness Lightfoot, it holding that such testimony is admissible
to impeach a witness in regard to a statement of the character testi-
fied to by the witness. We also think the Drake case is authority
for admitting the statements: "Well, you can have my last dollar,"
and "That is Renn now." In the motion for rehearing in the Drake
case, 29 Texas Crim. App., 265, it is said: "A statement of an
opinion merely can not be used to impeach a witness, except when
opinion is an issue, or where the opinion stated goes to *show bias of
the witness*." Whart. Crim. Law, sec. 482; 1 Greenl., sec. 449;
Holmes v. Anderson, 18 Barb., 420. Now, what does this record
show? The witness Vaughn testified that deceased came to his shop,
cleaned his pistol and told him that he was going to whip or kill
appellant that night, and that a short time before the killing he had
informed appellant of these facts and this threat. The witness Sims
says he was in the shop, and no such conversation took place; in fact,
deceased did not come in the shop that day, but instead, appellant
made a threat in regard to deceased. Vaughn as a witness was
friendly in his testimony to appellant, and testified to facts that
would aid appellant in his contention that he at the time of the
shooting had a reasonable apprehension of danger and grounds for
such apprehension. Is the State bound by the testimony of the
witness Vaughn, or can it impeach him and show its falsity, and
show it to be the testimony of one who by his prior acts and conduct
is a person biased in his feelings in the case? In the Drake case, it
is held to be admissible if it goes to show the bias of the witness.
In the Hickey case it is said: "If the witness by her testimony
shows bias, prejudice or hostility," she can be cross-examined about
such matters. Nothing more definite could be shown that would
demonstrate to the jury the bias of the witness Vaughn than this
conversation, in which it is alleged that appellant told Vaughn, "I
have made up my mind to do it—I have just got to do it," when
Vaughn replied to him, "Well, you can have my last dollar." And
shortly thereafter when he heard the shots, he remarked: "I guess
that is Renn now." It is true Vaughn denies all this, but another
witness is as positive that it did occur, and when this is followed
on the trial by the witness Vaughn testifying to preparation and a
threat on the part of deceased, which a witness who stayed in the
same shop says did not occur, the jury is entitled to have this light
in passing on the weight of the testimony. We are not passing on
which is telling the truth; that is a question for the jury, and in
doing so, they are entitled to have all the information that will
enable them to properly do so, and which tend to show the friend-
ship and bias of Vaughn for appellant, or the State witness for de-
ceased, in order to give proper weight to the testimony of the State
witness and the defendant's witness. Mr. Wharton in his excellent
work on the Law of Evidence lays down the rule, sec. 408: "One

of the advantages of cross-examination, as we shall have occasion to see more fully hereafter, is that it enables the bias of a witness to be disclosed, and this is peculiarly important where interest is no longer a ground for disqualification. We should at the same time remember, however, that pecuniary interest in a case is by no means the only influence by which bias is produced. Relationship, party sympathy, personal affection, work upon the perceptive powers of witnesses more subtly and more effectively, in the great body of cases, than does pecuniary interest; and it is by no means creditable to the English common law, that it regarded the less honorable influence as so powerful that the interest of a single penny would incapacitate, while it so little appreciated the force of the nobler affections that in only one case, that of marital relationship, did it recognize their existence. Now, however, that all disqualifications are removed, and that proof of interest goes only to credibility, influences of all kinds are equally objects of consideration, in determining how far credibility exists. Credibility, therefore, so far as it depends upon the capacity for accurate narration, is now relieved from the obstructions produced by the old rules, and is determinable by the ordinary laws of free logical criticism. The question now is, not whether a witness is to be received, but how far he is to be believed. Interest and party sympathy may be always shown in order to discredit a witness, and the same observation may be made as to near relationship."

And in section 545 he says the witness may be required to explain whatever would show bias on his part, citing authorities from almost every State in the Union.

In the 30 Am. & Eng. Ency. of Law, page 1088, the rule is laid down: "The fact that a witness manifests a bias or partiality for the party who calls him is a proper matter for the consideration of the jury in estimating the value of the testimony, and it is a general rule that on cross-examination any fact may be elicited which tends to show such bias or partiality. If the witness denies the facts showing bias, the cross-examining party may call other witnesses to contradict him." This is the rule adopted in Texas so far as we have been able to ascertain from the reports. Magruder v. State, 35 Texas Crim. Rep., 214; Daffin v. State, 11 Texas Crim. App., 76; Ashlock v. State, 16 Texas Crim. App., 13; Crist v. State, 21 Texas Crim. App., 361; Jenkins v. State, 34 Texas Crim. Rep., 201; Sims v. State, 38 Texas Crim. Rep., 637; Clark v. State, 43 S. W. Rep., 522; Webb v. State, 58 S. W. Rep., 82; Pace v. State, 79 S. W. Rep., 531. Judge Davidson in the cases of Earle v. State and Pope v. State, decided at this term of court, discusses at length this question, and those cases are here referred to as showing the admissibility of this character of evidence to show the feeling and bias of the witness. In those cases he cites many authorities, and we do not deem it necessary to again cite them, but refer to them and adopt the views there expressed by him.

The statement that the witness Vaughn said appellant had told him he was going to kill deceased, is admissible under all the authorities, as is also the statement of the witness Sims, that he heard appellant make a threat, and we think it equally clear that when appellant made this threat, that the witness Vaughn replied, "You can have my last dollar," and the other statements attributed to him were admissible as showing bias and friendly regard for appellant as going to the weight of his testimony. All of this testimony was properly limited by the court in his charge to the purposes for which it was introduced and was admissible, and no such matters are presented as should cause a reversal of the case. If the statement, "You can have my last dollar" and "that is Renn now" were not admissible for the purposes of impeaching and affecting the credibility of the witness Vaughn as showing his bias (which we think they were) yet said statements could not and did not tend to show that appellant was or was not guilty of any offense.

The motion for rehearing is overruled.

*Overruled.*

DAVIDSON, PRESIDING JUDGE (dissenting).—On a former day of this term this case was affirmed by a majority opinion. I then dissented, but did not write, trusting that my brethren would see the error of their way and upon motion for rehearing reverse the judgment to the end that defendant might have a legal trial, but they have written an opinion on the rehearing overruling that motion. I do not purpose to go into a detailed statement of the case or the questions involved, but will state a few reasons why this judgment is erroneously affirmed.

While the witness Vaughn was upon the stand he was asked, first, if he had not been arrested for beating his wife; second, how many times he had been arrested for adutlery, and, third, if he had not been arrested for aggravated assault upon his wife, etc. As these questions were propounded objection was interposed and sustained. My brethren hold there was no error in this, and cite authorities to sustain that conclusion. As a general rule, I agree with them that there would be no serious injury where the questions were not answered. There may be and are exceptions to this general statement. We have reversed judgments because of the unauthorized manner of the prosecution's asking illegitimate questions in order to discredit a witness before the jury, even when the questions were not answered. It is readily conceivable how by a continuous course of conduct of this sort a defendant's case might be seriously injured. We held this character of conduct reversible in the recent case of Sweeney v. State. I make these observations in passing as a caution to prosecutions not to indulge in this character of questioning, and the trial courts, if attorneys insist upon following up that line of conduct, to exercise proper discipline in preventing it. There is no occasion

for such things, and it only complicates cases unnecessarily and often requires reversals of judgments when otherwise it would not be necessary. I desire to again impress upon trial courts and State's counsel that a case should be so tried that when the verdict has been reached the record will be so free of taint and sufficient to prevent a reversal upon appeal. In other words, a case should be tried so that when the verdict has been rendered and judgment entered it will be a legal conclusion of the litigation. More care and circumspection in the trial of cases might result in fewer appeals, and certainly in fewer reversals. Under our statutes and Constitution a party accused of crime is entitled to a fair trial. He is entitled to a legal trial. Under the rule prescribed by the Legislature I do not understand why in the trial courts these statutory provisions are sought to be evaded on some technicality. I will readily agree with my brethren that it is not every slight error which calls for a reversal. It is only such error as might probably work injury to the accused. My brethren in their opinion recognize this rule as correct. So it would necessarily follow if the error probably did injure the accused he would not be asking too much of this court to reverse the conviction. It is a difficulty not easily solved for an Appellate Court to say that palpable violations of law is harmless error. I call attention to the following cases: Tijarina v. State, 45 Texas Crim. Rep., 182; Sweeney v. State, recently decided; Campbell v. State, 61 Texas Crim. Rep., 504, 138 S. W. Rep., 609; Wyatt v. State, 58 Texas Crim. Rep., 115; Baines v. State, 43 Texas Crim. Rep., 490.

2. There are quite a number of bills of exception presenting questions for revision, some of which clearly show error. Bill No. 6 recites that Vaughn, testifying in behalf of the defendant, stated in substance that deceased came to his barbershop on the evening of the homicide, got his pistol, which he had left there that morning, oiled and cleaned it, and said that he intended "to whip Renn or kill him that night." Vaughn later the same evening saw Renn at his barbershop and informed him what deceased had said. He also testified that he was at his shop several blocks away at the time the shooting occurred. Upon cross-examination Vaughn was asked by the prosecution if he did not see the witness Nick Lightfoot a short time after the shooting on the night of the homicide and have a talk with him and other persons, in which he, Vaughn, said that Renn had killed deceased Collins, and that Renn was in his barbershop that evening, and told him that he was going to kill Collins that night, which question was answered by Vaughn in the negative. Whereupon Lightfoot was introduced by the State, and over appellant's objection stated, in substance, that he saw and had a conversation with Vaughn on the night of the homicide after the shooting occurred, on the Rock Island Railroad, east of the place where deceased was killed, and that Watson was with him. That in the conversation Vaughn at that time and place said to them that Renn had killed

Collins, and that Renn was in his barbershop that evening, and told him, Vaughn, that he was going to kill Collins that night. Quite a number of objections are urged to this testimony, that it was not pertinent to any issue in the case, not admissible for any purpose, was immaterial to any issue in the case, was an effort to impeach the witness Vaughn on an immaterial matter, was hearsay, and an effort to impeach Vaughn upon his failure to give testimony favorable to the State. My brethren hold that this was admissible. I do not think so under any of the authorities. The State certainly had no legal right upon the examination of this witness to try to introduce before the jury the hearsay statements of Vaughn, if he made them, to contradict him in order to get the threat before the jury. Vaughn on this matter was the State witness. It was new matter, and it will be noted that he did not ask Vaughn if Renn had made the statement that he intended to kill Collins, but asked him if he did not have a conversation with the witness on the railroad at night, in which he told him that Renn had said he intended to kill Collins. Here was where the court made Vaughn testify for the State on new matter and with which it was not sought or intended to connect Renn. It was out of the presence of Renn, and was simply a failure on the part of the State to prove a threat or a statement after an illegitimate effort to do so. The failure to testify as indicated by the question could in no manner have injured the State. It was simply a failure to make proof in an attempt to impeach. It is a well settled rule that it is error to permit the State to impeach her own witness where such witness merely fails to remember or refuses to testify, or fails to make out the State's case. A mere failure to make proof is no ground for impeaching a witness. Bennett v. State, 24 Texas Crim. App., 73; Dunagain v. State, 38 Texas Crim. Rep., 614; Smith v. State, 45 Texas Crim. Rep., 520; Scott v. State, 52 Texas Crim. Rep., 164; Wells v. State, 43 Texas Crim. Rep., 451; Owens v. State, 46 Texas Crim. Rep., 14; Hanna v. State, 46 Texas Crim. Rep., 5; Ware v. State, 49 Texas Crim. Rep., 413; Skeen v. State, 51 Texas Crim. Rep., 39; Quinn v. State, 51 Texas Crim. Rep., 155; Shackelford v. State, 27 S. W. Rep., 8; Finley v. State, 47 S. W. Rep., 1015; Knight v. State, 65 S. W. Rep., 88; Gibson v. State, 34 Texas Crim. Rep., 112, 29 S. W. Rep., 471; Kessinger v. State, 71 S. W. Rep., 597; Erwin v. State, 32 Texas Crim. Rep., 519; Willeford v. State, 36 Texas Crim. Rep., 414; Ozark v. State, 51 Texas Crim. Rep., 106; Gill v. State, 36 Texas Crim. Rep., 589; Largin v. State, 37 Texas Crim. Rep., 574; Thomas v. State, 14 Texas Crim. App., 72; Dawson v. State, 74 S. W. Rep., 912; Goss v. State, 57 Texas Crim. Rep., 557.

It is also the rule in Texas if a witness be cross-examined as to new matter he becomes the witness of the party injecting the new matter, and if there is a mere failure to make the proof, the party is not entitled to impeach the witness as to such new matter by

proof of his statements to another witness and thus get hearsay testimony before the jury. Vaden v. State, 25 S. W. Rep., 777.

Again, it has been held in a great number of authorities, if the defendant's witness is cross-examined as to new matter he becomes the State witness in regard to that matter, and if the State fails to elicit the desired answer, it is the mere failure to make proof, and it is error to permit the State to impeach the witness as to such new matter by proving statements by other witnesses and in this manner get hearsay testimony before the jury. Woodward v. State, 42 Texas Crim. Rep., 188; Owens v. State, 35 Texas Crim. Rep., 345; Paris v. State, 35 Texas Crim. Rep., 82; Casey v. State, 49 Texas Crim. Rep., 174; Jackson v. State, 22 Texas Crim. App., 442; Gaines v. State, 53 S. W. Rep., 623; Maroney v. State, 95 S. W. Rep., 108; Hart v. State, 15 Texas Crim. App., 202; Shackelford v. State, 27 S. W. Rep., 8; Drake v. State, 29 Texas Crim. App., 265; Washington v. State, 17 Texas Crim. App., 197.

The State may only impeach her own witness by proof of contradictory statements where he testifies to either affirmative or negative facts which are injurious to the State's case. The evidence brought out from the witness Vaughn was not injurious to the State in any manner. It was just a failure of proof. The question asked Vaughn was not authorized. Sapp v. State, 77 S. W. Rep., 456; White v. State, 62 S. W. Rep., 749; Young v. State, 44 S. W. Rep., 835; Williford v. State, 36 Texas Crim. Rep., 414; Self v. State, 28 Texas Crim. App., 398; Tyler v. State, 13 Texas Crim. App., 205; Ross v. State, 45 S. W. Rep., 808; Kirk v. State, 35 Texas Crim. Rep., 224; Summerville v. State, 6 Texas Crim. App., 433; Davis v. State, 21 S. W. Rep., 369; Brown v. State, 55 Texas Crim. Rep., 9; Baum v. State, 60 Texas Crim. Rep., 638, 133 S. W. Rep., 271.

It has been held that where the party is surprised by the answer of a witness and that answer is hurtful to him or his cause, and when he has been led to believe by the witness that it would be favorable, under our statute, under some circumstances, he has a right to contradict even his own witness. Jeter v. State, 52 Texas Crim. Rep., 216; Baum v. State, 60 Texas Crim. Rep., 638, 133 S. W. Rep., 271. But no authority can be found which would justify the party to impeach his own witness when that witness has sworn to no fact injurious to him, but there is simply a failure to make proof. Bailey v. State, 37 Texas Crim. Rep., 579; Scott v. State, 31 Texas Crim. Rep., 276, 20 S. W. Rep., 549; Vaden v. State, 25 S. W. Rep., 777.

The decisions have held, and correctly so, that error in permitting the State to impeach her own witness is not cured by limiting in the charge the hearsay testimony to impeachment. Skeen v. State, 51 Texas Crim. Rep., 39; Ozark v. State, 51 Texas Crim. Rep., 106; Williford v. State, 36 Texas Crim. Rep., 414. It is also the rule that error in permitting the State to impeach her own witness is not cured

by withdrawing such hearsay testimony. Willeford v. State, 36 Texas Crim. Rep., 414. These cases and authorities, it would seem, ought to be sufficient to settle the rule if it be possible for decisions to settle a question. My brethren cite in support of the ruling of the trial court Drake v. State, 29 Texas Crim. Rep., 265, and Hickey v. State, 62 Texas Crim. Rep., 568, 138 S. W. Rep., 1051. Those cases are directly in point against the majority opinion. Had Vaughn given testimony against the State upon the line indicated, and it was hurtful, there might have been reason for the impeachment, but under no known rule I have been able to find is the ruling of the trial court justified. It may be inferred perhaps from the statement of the opinion on rehearing that my brethren conceived the idea that the conclusion they reached was justified by the fact and they so state that there was some issue between the witness Vaughn and the witness Lightfoot in regard to what occurred in Vaughn's barbershop in regard to the visit of the deeceased and appellant during the evening preceding the homicide at night. The opinion travels upon the theory that the two witnesses were disagreeing upon whether it was Renn who visited the shop or Collins, the deceased, and made the threats. I have looked this matter up with some degree of care to see whether this is correct or not, and as I read the record their statement is clearly not justified. Vaughn testified that deceased Collins left the pistol at his barbershop in the morning and went away. In the evening about five or six o'clock he returned, got his pistol, and called for some oil with which to clean it. That he did clean and oil it, and made a statement to the effect that he was going to whip or kill Renn that night. Lightfoot was not at Vaughn's barbershop when this occurred, and does not so testify or intimate and knew nothing about it. He testified that at another time during the same evening, but later, he was at Vaughn's barbershop and that Renn came also, and that while there Renn made threats with reference to the deceased Collins. Collins was not in the shop at that time, and there is not a fact in the record to indicate that he was. Neither Vaughn nor Lightfoot ever suggested Collins' presence at that time. In other words, this record demonstrates the fact to be that Collins visited Vaughn's barbershop, oiled his pistol, made his threats and went away, and that subsequently Renn came in and Vaughn informed him as to what Collins had said about him as to his purpose and intention of whipping him or killing him that night. Lightfoot was not present when Collins was in Vaughn's barbershop, but later when Renn came and after Collins left Lightfoot was there, so he states.

3. Another bill of exceptions recites that appellant's witness Vaughn testified that deceased had at his, witness', barbershop during the evening prior to the homicide at night, cleaned and oiled his pistol, at the time stating he was going to kill or whip Renn, appellant, that night, and that he, Vaughn, notified appellant of these

threats and statements of the deceased before the homicide occurred. On cross-examination Vaughn testified he was in his barbershop at the time of the shooting and did not hear it, and that the State witness Sims was not in his barbershop at that time nor just after the shooting, and Stewart did not come into his, Vaughn's, barbershop just after the shooting and say: "I hear some shooting down there; I reckon some negroes must be killing one another down there," and that he, Vaughn, did not state in reply to said Stewart, "I guess that is Renn now killing Collins." These questions were asked as basis for impeachment of Vaughn and as a predicate for that purpose. The State then introduced Sims, who testified he was in Vaughn's barbershop when the shooting occurred and heard it; that Stewart did come in and utter the remark above imputed to him, and that Vaughn replied, "I guess it is Renn now." A great number of objections and practically every available one were urged by appellant to the introduction of the above statement. My brethren hold this was not error. As I understand the authorities in Texas, there is no decision that will sustain them, or the ruling of the trial court. An unbroken line of authorities holds the ruling of the trial court in this instance error and material error. A great many of these cases are collated by Mr. Branch in his work on Criminal Law of Texas, section 348.

Opinions expressed in the absence of defendant to the injured party or others that would point to the guilt of defendant, or connect him with the transaction are hearsay. Jackson v. State, 20 Texas Crim. App., 190; Langford v. State, 9 Texas Crim. App., 283. It is also error to permit the State to impeach a witness by proof of a statement of a witness expressing an apprehension of trouble, whether based on knowledge of defendant or his actions, or for any other reason. Wilson v. State, 37 Texas Crim. Rep., 64; Vanhouser v. State, 52 Texas Crim. Rep., 572; Hobbs v. State, 53 Texas Crim. Rep., 71; Drake v. State, 29 Texas Crim. App., 265; Woodward v. State, 50 Texas Crim. Rep., 294; Bluman v. State, 33 Texas Crim. Rep., 43; Gaines v. State, 38 Texas Crim. Rep., 202; Red v. State, 39 Texas Crim. Rep., 414; Jennings v. State, 60 Texas Crim. Rep., 421, 132 S. W. Rep., 473; Hickey v. State, 62 Texas Crim. Rep., 568, 138 S. W. Rep., 1051.

It has also been held that it was error to introduce as evidence before the jury the opinion of a witness as to the cause of the trouble by impeaching the witness by proof of a statement expressing such opinion. Marsh v. State, 54 Texas Crim. Rep., 147; Willeford v. State, 32 Texas Crim. Rep., 425. In quite a line of cases it has been held error to permit the State to impeach a witness by proving either by admission of the witness or evidence laying the predicate that witness by words or acts had expressed an opinion of defendant's guilt, or has an opinion as to who had committed the offense. Cogdell v. State, 43 Texas Crim. Rep., 178; Morton v. State, 43 Texas Crim. Rep., 533; Vann v. State, 45 Texas Crim. Rep., 434; Davis v. State,

20 S. W. Rep., 923; Jenkins v. State, 45 Texas Crim. Rep., 173; Watson v. State, 50 Texas Crim. Rep., 171; Red v. State, 39 Texas Crim. Rep., 414; Kirk v. State, 48 Texas Crim. Rep., 624; Parker v. State, 46 Texas Crim. Rep., 461; Scott v. State, 49 Texas Crim. Rep., 386; Jennings v. State, 60 Texas Crim. Rep., 421, 132 S. W. Rep., 473; Burnam v. State, 61 Texas Crim. Rep., 51, 133 S. W. Rep., 1045.

It has also been held that the reasons of a witness for his actions where they involve an opinion as to the guilt of defendant or amount to an expression hurtful to him, are not admissible. Dempsey v. State, 27 Texas Crim. App., 269; Campbell v. State, 30 Texas Crim. App., 647; Underwood v. State, 39 Texas Crim. Rep., 409; Bennett v. State, 39 Texas Crim. Rep., 639; Chambers v. State, 46 Texas Crim. Rep., 61; Pinckord v. State, 13 Texas Crim. App., 468; Smith v. State, 35 Texas Crim. Rep., 391, 33 S. W. Rep., 1080. I deem it unnecessary to cite any greater number of authorities to show the error of the trial court in admitting the testimony, and the erroneous conclusion of the majority opinion in sustaining the ruling of the trial court. The rule is also well settled that remarks of bystanders unheard by the accused can not be introduced. For collation of cases see Branch, Criminal Law, sec. 343. The above are sufficient to satisfy, it would seem, any candid legal mind of such error.

4. The theory of appellant was self-defense, based on communicated threats, and the acts and conduct of the deceased at the time of the shooting. The shooting occurred not far from the foot of the stairway that led up to a Masonic lodge room. Appellant and a friend were standing leaning against the wall talking. Deceased was coming down the street until he got opposite appellant and immediately turned in his direction, and as, appellant shows made a demonstration or placed himself in the attitude of causing appellant to believe that deceased was then about to attack him and execute his previously uttered threats, and that thereupon he began shooting. The State offered evidence showing a conversation between a State witness and deceased in regard to the deceased getting a blank application for a petition perhaps to send in name of the witness to the lodge for membership, and that he had started in the direction of where the shooting occurred for the purpose of going upstairs into the lodge room for that purpose. This was unknown to appellant. Over the objection of appellant these matters, statements were permitted to go to the jury. It is unnecessary to state the numerous objections urged. The ruling of the trial court was error, and my brethren are clearly in error in sustaining such ruling. The authorities in Texas on this question are unbroken, holding such ruling to be error. It is a rule by statute and all the decisions that the case must be viewed from the defendant's standpoint and as it reasonably appeared to him at the time he acted. This is a basic principle, fundamentally true in regard to an accused person when on trial for his life or liberty, or for a violation of the law. The decision of my brethren not only ignore

the principle, but the effect of their opinion is to absolutely overturn it. The decisions hold without dissent that an accused person can only be bound by the facts as they reasonably appear to him. The undisclosed reasons, motives or purposes of the deceased in being where the accused was or in going to the scene of the homicide, or proof as to the real destination of the deceased, if it is not shown to have been known to the accused, is never admissible against him where it affects his defense. Brumley v. State, 21 Texas Crim. App., 222; Johnson v. State, 22 Texas Crim. App., 206; Ball v. State, 29 Texas Crim. App., 125; Gilcrease v. State, 33 Texas Crim. Rep., 619; Stell v. State, 58 S. W. Rep., 75; Woodward v. State, 42 Texas Crim. Rep., 188; Stanton v. State, 42 Texas Crim. Rep., 269; Adams v. State, 43 Texas Crim. Rep., 272, 64 S. W. Rep., 1055; Wall v. State, 62 S. W. Rep., 1062; Wooley v. State, 64 S. W. Rep., 1054; Adams v. State, 44 Texas Crim. Rep., 64; Gray v. State, 47 Texas Crim. Rep., 375; Saye v. State, 50 Texas Crim. Rep., 569; Tillman v. State, 51 Texas Crim. Rep., 202; Young v. State, 41 Texas Crim. Rep., 442; Pratt v. State, 53 Texas Crim. Rep., 281; (Gant v. State, 51 Texas Crim. Rep., 291); Bradley v. State, 60 Texas Crim. Rep., 398, 132 S. W. Rep., 485; Darnell v. State, 58 Texas Crim. Rep., 585, 126 S. W. Rep., 1126; Phipps v. State, 34 Texas Crim. Rep., 560; Maroney v. State, 95 S. W. Rep., 109; Dowell v. State, 58 Texas Crim. Rep., 482, 126 S. W. Rep., 874.

It was held in Wooley v. State, 64 S. W. Rep., 1054, that the fact that such testimony is res gestae constitutes no exception to the rule. Winn v. State, 54 Texas Crim. Rep., 538; Simpson v. State, 48 Texas Crim. Rep., 328; Richards v. State, 53 Texas Crim. Rep., 400; Young v. State, 59 Texas Crim. Rep., 358, 127 S. W. Rep., 1059.

Upon what theory the acts, declarations and purposes of the deceased were admissible against the defendant where the bill shows them unknown to the accused is not explainable upon any theory of self-defense or any known principle involved in that doctrine. It is a direct attack upon his self-defense theory by evidence of which he was entirely ignorant, and was a fatal thrust and an illegal one at his self-defense. It is said that the law of self-defense is a natural law inviolable and unassailable, that it is higher than municipal law and has often been stated to be a God-given right. Under the decision of my brethren these bulwark and guaranteed rights are swept aside and the undiscovered and unknown purposes of the deceased are made to bind the defendant and cut him off from his theory and right of self-defense, and eliminate it from the case. Without discussing these matters further I have stated this much and collated some of the authorities sustaining my dissenting views. I do not believe that the right of self-defense should thus be ruthlessly set aside.

I wish to make the above statements in regard to the transactions in order that it will more clearly elucidate the correctness of what I have said. This case has been tried upon false theories, and false

application of the rules of law, or rather want of rules of law. There has been applied rules which are totally inapplicable to anything that arose on the trial and in direct violation of every decision ever rendered by this court.

I therefore respectfully enter my dissent.