# JANUARY 2, 1935

### L. B. BRYANT V. THE STATE.

No. 17051.   Delivered January 2, 1935.
Reported in 77 S. W. (2d) 672.

The opinion states the case.

*Theo. E. Simmang,* of San Antonio, and *E. C. Overall,* of Gonzales, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder, and his punishment was assessed at confinement in the State penitentiary for a term of five years.

Appellant was a barber and conducted a barber shop in the city of San Antonio. The deceased's wife owned and conducted a restaurant in a building adjoining appellant's barber shop. Appellant was a frequent visitor at the restaurant where he would sit and talk to the wife of deceased. His conduct towards her was such that deceased became angry and told appellant to stay out of the restaurant, at which time some unpleasant remarks were passed between them. On the evening of August, 26, 1933, the appellant talked to the wife of the deceased and some time later at night the appellant and three companions drove up to the deceased's home in a car and honked the horn two or three times. When the deceased heard the sound of the horn he started to go towards the car to ascertain the purpose of the late visitors at his home. As he approached the car he said, "What do you s—o-b—s want?", and as he stepped on the right hand side of the running board the appellant shot him with a 38 caliber pistol. At the time he was killed the deceased was partly undressed as he was preparing to retire for the night. He had no weapon of any kind and none were found on or about his body.

By bill of exception No. 1 appellant complains of the action of the trial court in declining to instruct the jury to return a verdict of not guilty upon two grounds: First, because the State failed to show that the deceased's death was caused by the bullet wound in the tip of the nose; and, second, because it was not shown that the pistol was a deadly weapon. We do not agree

with appellant's contentions. The undertaker testified that the bullet entered the tip of the nose but he did not probe the wound. If the bullet had passed through the tip of the nose from either side, there was no necessity for a probe to determine the course of the bullet. Besides, the appellant testified that he killed deceased by shooting him with a .38-caliber pistol. That such a pistol is a deadly weapon is not even open for serious discussion.

By bill of exception No. 2 appellant complains of the action of the trial court in permitting the State to ask its first witness, Josephine Killman, the wife of deceased, if appellant did not on the afternoon preceding the killing ask her for a date for that night, to which she replied, "He did not." The State then asked the witness the following question: "Did you not tell him that you and your husband had made up, were going back to live together, and that you did not want to see him, and he said, 'If you don't see me there will be trouble'?", to which she replied, "No, he did not; he asked to borrow some money. I did not tell him we were going back together and he did not say there would be trouble if he did not see me." Thereupon the district attorney produced an affidavit, which the witness admitted she had signed, and began reading from same in the presence of the jury as follows: "On the afternoon before the killing, L. B. Bryant asked me for a date for that night, and I told him I could not see him as we had agreed to make up and were going back together, and he said, 'If I don't see you, there will be trouble.'" The district attorney then told the witness, "Now state if you made such statement to Sgt. Kelley and had same written down and you signed it, and if the same is true," to which appellant objected on the ground that the State was trying to impeach its own witness, who had previously testified that appellant had not tried to date her, that she had not told appellant that she and her husband were going back together, and that appellant had not said to her that if he did not see her there would be trouble. It appears that the trial court permitted the State to read from said affidavit, which the witness had theretofore made, on the ground that the State was surprised at the testimony given by her. The bill of exception shows that the appellant at a previous term of said court had filed and presented a motion for continuance to which was attached an affidavit of said witness, stating what she would testify to upon the trial which coincided with the testimony given by her on direct examination by the State, and which motion for continuance was granted by the court. The bill of

exception further shows that just prior to the time the district attorney placed said witness upon the stand he took her to an adjoining room and there read to her the affidavit which he had among his files and questioned her with reference to the statements therein contained, which statements she repudiated insofar as the matter therein stated related to any intimate relations with appellant.

By bill of exception No. 3 the appellant complains of the action of the trial court in permitting the State, after the witness Josephine Killman had on direct examination by the State testified that she was in bed when the car horn was sounded on the night her husband was killed, that she begged him not to go out to the car, and while he was going to the car she heard some one say, "I will kill you," or something to that effect but did not know who said it, to draw from its files an affidavit, which the witness admitted she had signed, and read therefrom as follows: "I was in bed and heard a car horn blow. I followed my husband to the door as he was going to L. B. Bryant's car. I heard L. B. Bryant say, 'I will kill you,' or words to that effect," to which appellant objected on the ground that the district attorney was trying to impeach the State's witness. At the request of the district attorney the court overruled the objection on the ground of surprise, but the bill of exception shows that the appellant had theretofore filed an application for a continuance to which was attached an affidavit of said witness in which the facts set forth coincided with her testimony, and the district attorney admitted that he had previously read said affidavit of said witness attached to said motion; that he had read the affidavit in his possession to said witness and had also talked to the witness just before he placed her on the stand at which time she denied having heard appellant say, "I will kill you." Under said state of facts we do not believe that the State could claim surprise.

By bill of exception No. 4 the appellant complains of the action of the trial court in permitting the State, after the witness Jacob Gibbons had testified on direct examination by the State that he had not seen the appellant and Josephine Killman hugging and kissing at the restaurant or other places and had not seen them with their arms around each other, to draw from its files an affidavit purporting to have been made and signed by the witness and read therefrom in the presence and hearing of the jury as follows: "I have seen L. B. Bryant and Josephine Killman hugging and kissing at the restaurant and other places and have seen them with their arms around each other many

times," to all of which the appellant then and there objected on the ground that it was an attempt on the part of the State to impeach its own witness. The court at the request of the district attorney overruled the objection on the ground of surprise, but the bill of exception shows that the district attorney had taken the witness into a room before he was placed on the witness stand and that the affidavit was read to the witness by the district attorney and the witness told the district attorney that he had never seen the defendant L. B. Bryant and Josephine Killman hugging and kissing or with their arms around each other; that he informed the district attorney that that part of his affidavit was not true.

We believe that the appellant's contention should be sustained. It is well settled in this State that a party may impeach his own witness where he or she states an affirmative fact injurious to the State and in the nature of a surprise, but it is equally true that if a witness merely fails to testify to facts expected to be elicited, the party offering the witness on this point can not under the guise of impeachment supply the evidence from a third party or get before the jury statements that he or she may have theretofore made which are otherwise inadmissible. In the case under consideration the State placed the witnesses Josephine Killman and Jacob Gibbons upon the stand. They had not given any testimony injurious to the State but had only failed to testify to facts which the State expected to elicit from them, and then the State sought to supply the desired testimony by affidavits which they had theretofore made and which were not made in the presence and hearing of the appellant. Under such circumstances, in accordance with the holding of this court in the case of Bryan v. State, 234 S. W., 83; Katz v. State, 245 S. W., 242; Whitman v. State, 246 S. W., 1037; Baughn v. State, 73 S. W. (2d) 855; Bennett v. State, 24 Texas App., 73; Renn v. State, 64 Texas Crim. Rep., 655, the testimony offered by the State was erroneously received. We therefore sustain the appellant's contention.

For the errors hereinabove pointed out, the judgment of the trial court is reversed and the cause is remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.